**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **RICHARD BEN GLAWSON** | : | **CIVIL NO. 5:10-CV-90089 (H.C.)** |
| | : | |
| Petitioner | : | **CRIM. NO. 5:05-CR-13 (H.C.)** |
| | : | |
| vs. | : | |
| | : | |
| **UNITED STATES OF AMERICA** | | |
| | | |
| Respondent | | |

**RESPONDENT UNITED STATES OF AMERICA ANSWERS
IN OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET
ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Pursuant to 28 U.S.C. § 2255, the Rules Governing Section 2255 Proceedings, 28 U.S.C. Foll.§ 2255 (Section 2255 Rules), the United States submits this answer to petitioner's motion to vacate, set aside or correct sentence. The United States opposes petitioner's motion. As stated below, petitioner's motion should be denied.

I.

**STATEMENT OF THE CASE**

A.  **Course of Proceedings and Disposition in the Court Below.**

On October 31, 2007, a jury returned a verdict of guilty to all counts of a seven count, second superseding indictment against the Defendant, Richard Glawson (R1:106). Count One charged that on June 03, 2003, Glawson distributed cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). Count Two charged that on June 04, 2003, he distributed marijuana, in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(D). Counts Three and Four alleged that on June 20, 2003 and

June 23, 2003, respectively, Glawson distributed more than five (5) grams of cocaine base, in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(B)(iii). Count Five charged that on November 30, 2004, Glawson possessed marijuana with the intent to distribute, in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(D). Count Six charged that on July 03, 2003, Glawson possessed a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) and 924 (a)(2). Count Seven charged that on December 25, 2006, Glawson escaped from custody, in violation of 18 U.S.C. § 751(a)(R1:106).

Glawson appeared for sentencing on March 13, 2008. At the close of the hearing, he was sentenced to a total of three hundred and twenty-seven (327) months confinement (R1:108,110). A timely notice of appeal was filed on March 14, 2008 (R1:110).His conviction and sentence was affirmed by the Eleventh Circuit on September 8, 2009 (R1:128). The U.S. Supreme Court denied certiorari on January28, 2010. (R1:130) A motion to set aside the conviction pursuant to 28 U.S.C § 2255 was filed on September 27, 2010 (R1:131).

**B.Statement of facts.**

**<u>DRUG AND FIREARM VIOLATIONS</u>**

The offenses set forth in Counts One through Seven represent the fruits of a joint narcotics investigation by the Macon office of the Alcohol, Tobacco and Firearm (ATF) and the Bibb County Drug Squad. Special Agent Rafiq Ahmad was the federal agent. He was assisted by Deputy Joseph Whitehead (R119:28). Although Deputy Whitehead assisted in all phases of the investigation, he was killed before the case was called for trial (R119:29).

In order to conduct the narcotics investigation, S/A Ahmad and Deputy Whitehead used two (2) confidential informants: Katina Fort and James Jordan (R119:28). Ms. Forte had met Jordan

several months before the investigation began and knew him by the name of Terry Green or Terry Butler (R119:107). Mr. Jordan became acquainted with Glawson through Ms. Forte (R119:138).

On June 03, 2003, Forte and Jordan met with S/A Ahmad and Deputy Whitehead in preparation for a controlled purchase of crack cocaine from Glawson. During the meeting, Forte made a monitored and recorded phone call to Glawson and arranged to purchase a quantity of crack cocaine (R119:30,108). As a result of the call, Glawson agreed to meet Forte at the Hooters Restaurant on Arkwright Road (R119:115). Ms. Forte was searched and supplied with five-hundred dollars to be used to buy the crack cocaine from the Defendant (R119:31). Upon Ms. Forte's arrival at Hooters, she was met by Defendant who was driving a white pickup truck with an orange bedliner (R119:32,119). The Defendant allowed Ms. Forte to enter the pickup truck where he sold her ten grams of crack cocaine (R119:118,119).

Following the sale, Ms. Forte returned to the location where she had initially met with S/A Ahmad and Deputy Whitehead. The crack cocaine was immediately turned over to Deputy Whitehead in the presence of S/A Ahmad (R119:33, 34). At trial, the cocaine was labeled and identified as Government's exhibit 53 (R120:109).

A second purchase was arranged on June 04, 2003. However, on that occasion, James Jordan was used instead of Katina Forte (R119:43). The investigative procedures followed during the June 03, 2003, buy were essentially the same as those used during the purchase on June 04, 2003. Mr. Jordan met with S/A Ahmad and Deputy Whitehead at a prearranged location. During the meeting, he made a recorded phone call to Glawson and arranged to meet the Defendant at Hooters. This was later changed by Glawson to the McDonald's on Riverside Drive (R119:140,144).

The drug transaction between Mr. Jordan and Glawson took place inside the bathroom of the

McDonald's. Glawson arrived at the restaurant driving the same white pickup with the orange bedliner (R119:145). While inside the bathroom, Glawson sold Mr. Jordan approximately 26 grams of marijuana (R119:145). Following the sale, the marijuana was taken back to the staging area by Jordan where it was surrendered to Deputy Whitehead as witnessed by S/A Ahmad (R119:146). At trial, the marijuana was identified as Government's exhibit 54 (R120:109).

Mr. Jordan was also at the center of a second purchase of crack cocaine from Glawson on June 20, 2003. On that date, Mr. Jordan again met with S/A Ahmad and Deputy Whitehead (R119:52, 149). While meeting with the agents, Mr. Jordan made a recorded phone call to Glawson (R119:149). This call resulted in Glawson agreeing to meet Mr. Jordan in order to sell him one (1) ounce of crack cocaine (R119:150,153). Initially, Glawson arranged to meet Mr. Jordan at Hooter's. However, he subsequently changed the location to the McDonald's (R119:154).
Glawson arrived at the McDonald's in the white pickup truck he had operated on the two prior occasions (R119:154). Mr. Jordan proceeded to the right side of the pickup where Glawson sold him eighteen (18) grams of crack cocaine (R119:155). For trial purposes, the drugs were identified as Government's exhibit 55 (R:110). Mr. Jordan immediately took the crack cocaine back to the meet location and surrendered it to Deputy Whitehead and S/A Ahmad (R119:156).

During the purchase of exhibit 55, Mr. Jordan asked Glawson if he would sell Mr. Jordan a firearm (R119:158,161). This conversation laid the foundation for the purchase of a 9mm, semi-automatic pistol from Glawson on July 03, 2003. On that date, Mr. Jordan met with S/A Ahmad and Deputy Whitehead (R119:66,174). A recorded phone call was made by Mr. Jordan to Glawson (R119:175). After the phone call, Mr. Jordan traveled to the Chevron Service station where he met Glawson. Mr. Jordan observed that Glawson was still operating the white pickup truck (R119:177).

Mr. Jordan went to the drivers side of the truck. He gave Glawson the money which had been given to him by the agents. In exchange, Glawson sold Mr. Jordan a 9mm pistol (R119:178). The gun was subsequently turned over to S/A Ahmad who identified it as a Smith and Wesson 9mm pistol (R119:69,70).

In a separate investigation undertaken by the Middle Georgia Drug Task Force, a confidential informant, later identified as Chris Westfall, called Glawson and arranged for him to deliver four ounces of marijuana. The transaction was set for November 30, 2004 (R120:24). Officer Ted Darley was present at the time the call was made (R120:24).

Based on the phone conversation with Westfall, Defendant agreed to meet Westfall at Peach Auto Paint and Collision (R120:25). Officer Darley set up surveillance at that location. While conducting surveillance, Darley saw a car which matched the description provided to him by Westfall. A traffic stop was conducted and Glawson was ordered out of the vehicle (R120:34). A subsequent search of the back seat area uncovered four one-ounce bags of marijuana (R120:39). Darley placed the marijuana in a sealed evidence bag. It was offered during trial as Government's exhibit 59 (R120:42).

### THE ESCAPE

On August 10, 2006, Judge Wilbur D. Owens issued a warrant for Glawson's arrest. The warrant was premised on Glawson's failure to appear at a pre-trial conference on August 09, 2006 (R1:62).

Glawson was arrested by representatives from the United States Marshals Service and housed at the Bibb County Law Enforcement Center (R119:55). Shortly after his arrival, he switched arm bands with another inmate and was able to escape from the Law Enforcement Center using the

armband (R120:74). He was later apprehended and returned to custody where he remained until trial.

## THE CHAIN OF CUSTODY

The crack cocaine exhibits (53, 54 and 55) were taken by Deputy Whitehead and surrendered to the evidence custodian, Robert McCombs. The exhibits were sealed when McCombs took custody (R120:109). As evidence custodian, McCombs placed a bar code on the bag which contained the exhibits and returned them to Whitehead (R120:109).

Due to the death of Deputy Whitehead, the record does not show when he delivered exhibits 53, 54 and 55 to the crime lab. However, at some point the exhibits were taken to the crime lab for initial testing which was conducted by chemist Margaret Littlely (R120:133).

Following the initial testing, the crime lab returned the exhibits to the new evidence custodian, Mike Holt (R120:121). The bag which contained the exhibits was sealed when received by Holt (R120:121). On June 03, 2005, Holt removed the exhibits from the evidence room (sealed) and turned them over to Deputy Whitehead for transport back to the crime lab for supplemental testing (R120:121). The exhibits were received at the crime lab and tested by Chemist Dustin Collins (R120:133). After his tests had confirmed that the exhibits were cocaine base, they were returned (sealed) to Officer Holt who placed the exhibits in the evidence room (R120:121). The exhibits next surfaced during trial as exhibits 53, 54 and 55.

The chain of custody for the marijuana exhibits (56 or 59) took a distinctively different route from that of the crack cocaine. This was due to the fact that the crime lab had a policy of not testing marijuana. Therefore, testing was left to officers specially training for this purpose (R120:158). Consequently, marijuana was left in the evidence room unless a special request was made for the crime lab to test the marijuana (R120:159).

After the purchase of exhibit 56, the marijuana was relinquished to Deputy Whitehead. It was then placed in an evidence bag and sealed by Whitehead (R120:109). The evidence custodian took the bag, affixed a bar code and returned it to Deputy Whitehead (R120:109). On October 17, 2007, the evidence custodian removed exhibit 56 and gave it to Deputy Billy Johnson for transport to the crime lab for testing (R120:121). The bag which contained the exhibit was sealed when released to Johnson (R120:121).

The exhibit was tested by chemist Jeanne Gibbs and found to be marijuana (R120:153). Following the testing, the exhibit was returned (sealed) to the evidence custodian who maintained custody (R120:121).

Exhibit 59 took a similar path as that of exhibit 56. Deputy Ted Darley seized the exhibit and immediately released it to officer Chris Patterson for testing. Patterson, in the presence of Darley, conducted a presumptive test for marijuana. The testing took approximately seven (7) minutes. The exhibit was returned to Darley who placed the four bundles that comprised the exhibit into an evidence bag. He sealed the bag, dated it and placed his signature on the bag (R120:48).

The exhibit was then given to the evidence custodian who placed a bar code on the bag (R120:109). Exhibit 59 remained in the evidence room until October 17, 2007, when the evidence custodian released it to Officer Billy Johnson for transport to the crime lab for testing (R120:123). The exhibit was analyzed by Chemist Jeanne Gibbs and returned to the evidence custodian who maintained custody up to the date of trial (R120:121).

<u>THE INFORMANTS</u>

Counts one, two, three, four and six were based on the testimony of two confidential informants: (1) James Jordan and (2) Katina Fort. Both had previously been charged in a separate

indictment with possession with the intent to distribute cocaine, using a firearm during the commission of a drug trafficking offense and possession of a firearm by a convicted felon.

In order to resolve the charges against him, Jordan entered a plea of guilty to distributing crack cocaine and possession of a firearm by a convicted felon. Fort elected to plea guilty to distributing crack cocaine and possession of a firearm by a convicted felon.

The respective plea agreements provided that if defendants provided substantial assistance the government would either file a 5K motion before sentencing or a Rule 35(b) motion if the assistance came after sentencing.

II.

## STATEMENT OF ISSUES

In support of his Section 2255, Defendant has raised the following issues:

**Petitioner's First claim as stated specifically in his Memorandum of Law in Support of his Section 2255 Motion alleges:**

> Petitioner's conviction and sentence must be vacated because he was the subject of ineffective assistance of counsel prior to trial, during and subsequent to trial.

**As Ground Two Petitioner alleges:**

> Petitioner's conviction and sentence must be vacated because the court lacked jurisdiction since crack cocaine is not a schedule II controlled substance.

**Petitioner alleges as Ground Three:**

> Petitioner's conviction and sentence must be vacated, because the testimony of two informants constituted bribery in violation of 18 U.S.C. § 201(c)(2).

**Petitioner alleges as Ground Four:**

Petitioner's conviction and sentence must be vacated and set aside because his trial attorney failed to object to the career offender designation.

III.

## **DISCUSSION**

Glawson was charged in counts one, three and four with distribution of crack cocaine (R1:84). He was found guilty of these offenses following a jury trial (R1:106). In support of his Section 2255 motion, he contends that he was denied effective assistance of counsel before, during and after trial (Brief, p.1). These claims are based on his contention that crack cocaine is not a schedule II controlled substance. Therefore, he argues, his counsels were ineffective by not raising this issue before, during and after return of the jury verdict.

**Ineffective Assistance of Counsel:**

In order to prevail on an ineffective assistance of counsel claim, the defendant must demonstrate both that (1) his counsel's performance was deficient, in that it fell below an objective standard of reasonableness, *and* (2) that he suffered prejudice as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 697,104 S. Ct 2052 (1984). A court deciding an ineffective assistance claim need not approach the Strickland inquiry in the same order or address both components of the *Strickland* inquiry if the prisoner makes an insufficient showing on one. See Holladay v. Haley, 209 F. 3d 1243, 1248 (11th Cir. 2000) (noting that "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice-versa").

The Eleventh Circuit Court of Appeals stated in Rogers v. Zant, 13 F. 3d 384 (11th Cir.

1994):

> The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 686, 104 S. Ct. 2052, 2064 (1984). To establish prejudice, the Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.....When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices...that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993).Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one.

Rogers, 13 F.3d at 486.

The merits of Defendant's ineffective assistance claims hinges on whether crack cocaine is a schedule II controlled substance. There are numerous decisions which have taken positions adverse to that raised by Glawson; United States v Catchings, 922 F2d 777, 780 (11th Cir 1991)(The controlled substance act defines crack to be a derivative of cocaine under 21 U.S.C. § 812(c); United States v. Rogers, 228 F3d 1318, 1328 n.17 (11th Cir 2000)(crack is a schedule II drug); United States v Sloan, 97 F3d 1378, 1381-82 (11th Cir 1996)(cocaine base clearly falls in the definition of cocaine); and United States v. Deisch, 20 F3d 139, 149-52 (5th Cir 1994)(cocaine base is a derivative of cocaine and falls within the definition if cocaine). These decisions render meritless any of Glawson's claims of ineffective assistance or prosecutorial

misconduct which relate to crack cocaine not being a schedule II controlled substance.

**INFORMANT TESTIMONY**

Much of Glawson's animus is leveled at the two informants whose testimony led to his ultimate down fall. The crack cocaine charges were based on controlled buys made by James Jordan and Katina Forte. Both had been indicted on January 15, 2003 and charged with drug and firearm offenses (See attachment A). In lieu of trial, they executed written plea agreements with the government. As part of these agreements, they agreed to provide assistance to the government in exchange for a sentence reduction via 5K motion or Rule 35(b) motion. (See attachments B, p.6 and attachment C, p.6.) It was these provisions and the hope of a sentence reduction which led to their testimony in Glawson's trial.

Their testimony does not constitute a crime in violation of 18 U.S.C. § 201(c)(2). This ridiculous argument is siphoned from the now defunct case of United States v. Singleton, 144 F. 3d 1343 (10th Cir 1998), rev'd en banc, 165 F. 3d 1297 (10TH Cir 1999). The issue in Singleton involved whether the use of confidential informants pursuant to a plea agreement, which anticipated a sentence reduction, constituted bribery in violation of 18 U.S.C. § 201(c).

This issue came before the Eleventh Circuit in 1999 in United States v. Lowery, 166 F. 3d 1119). The court concluded that agreements where the government trades sentencing recommendations or other considerations in exchange for cooperation does not violate 18 U.S.C. § 201 (c)(2). Id. at 122. It was given additional support in United States v. Thayer, 204 F.3d 1352 (11th Cir. 2000). The court held that testimony derived from plea agreements does not violate 18 U.S.C. § 201. Id at 1357. Consequently, Glawson's argument regarding informant testimony rings hollow based on circuit precedent and should be ignored.

**CAREER OFFENDER ENHANCEMENT**

Glawson argues that his lawyer was ineffective by not challenging the P.S.R.'s determination that he was a career offender under U.S.S.G. § 4B1.1. According to him, the sentencing calculations by which he was sentenced were "wrong all the way to the career offender level" (Brief, p.22). As support for his position, Glawson's dissects each crack cocaine conviction and labors to show why the career offender position should not have applied. Then he argues he should have been subject to a reduced sentence. His labors are in vain.

Following a jury trial, Glawson was convicted of distributing more than five grams of crack cocaine on three separate occasions in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(iii). The P.S.R. attributed at least 400 kilograms, but less than 700 kilograms of marijuana to Glawson. This figure resulted from converting the 36.94 grams of crack purchased and 126.43 grams of marijuana seized to the marijuana equivalent (P.S.R. ¶ 23). Given this quantity of drugs, Glawson's base offense level became 28. See U.S.S.G. § 2D1.1(c)(6). His adjusted offense level was 30 based on obstruction of justice enhancement due to his escape from jail (P.S.R. ¶ 27). The P.S..R. further determined that Glawson was a career offender because he had a prior armed robbery conviction and a controlled substance offense. Since Glawson was a career offender his base offense level was calculated to be a level of 34 with a criminal history of VI. This gave an advisory guidelines range of 262-327 month confinement (P.S.R. ¶ 86).

In order to calculate Glawson's advisor guidelines range, the P.S.R. employed the career offender table located at 4B1.1(b). According to this table:

> If the offense level for a career criminal from the table below

is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

| | Offense Statutory Maximum | Offense Level |
|---|---|---|
| (A) | Life | 37 |
| (B) | 25 years or more | 34 |
| (C) | 20 years or more, but less than 25 years | 32 |
| (D) | 15 years or more, but less than 20 years | 29 |
| (E) | 10 years or more, but less than 15 years | 24 |
| (F) | 5 years or more, but less than 10 years | 17 |

U.S.S.G. § 4B1.1 (2010).

The three crack cocaine convictions called for a statutory penalty of at least five but less than forty years in prison. See 21 United States Code, Section 841 (b)(1)(B)(iii). Therefore, the sentencing table under 4B1.1 (B) imposed a base offense level of 34 and a criminal history category of VI. Consequently, the advisory guidelines range was properly calculated to be 262-327 months. The court adopted guidelines calculated in the P.S.R. and correctly sentenced Glawson to 327 months incarceration. As such, his claim of ineffective assistance for failing to contest to the career offender application is meritless.

### III.

### STATEMENT ON EVIDENTIARY HEARING

Generally, if a petitioner alleges facts which, if true, would entitled him to relief, on evidentiary hearing is required. Avon v United States, 291 F3d 708, 715 n.5 (11th Cir. 2002).

Section 2255(b) provides that, "unless the motion and files and records of the case conclusively show that petitioner is entitled to no relief," the court should conduct on evidentiary hearing. However, a hearing is not required on patently frivolous generalizations or where petitioner's allegations are affirmatively contradicted by the record. <u>Vick v. United States</u>, 730 F2d 707 (11th Cir 1984); <u>United States v Laetividal-Gonzalez</u>, 939 F2d 1455, 1465 (11th Cir. 1991).

Under the facts and allegations stated in support of the present petition, the record is sufficiently established to reject each of Glawson's claim without an evidentiary hearing is necessary.

## **CONCLUSION**

Based on the arguments and authority cited herein, Defendant's claims are without support. Therefore, his claim for relief should be denied.

Respectfully submitted, this 16th day of March, 2011.

        MICHAEL J. MOORE
        UNITED STATES ATTORNEY


BY:    s/CHARLES L. CALHOUN
        BAR NO. 102875
        ASSISTANT UNITED STATES ATTORNEY
        United States Attorney's Office
        Middle District of Georgia
        P.O. Box 1702
        Macon, Georgia 31202
        Telephone: (478) 752-3511
        Fax Number: (478) 621-2655

# CERTIFICATE OF SERVICE

I, Charles L. Calhoun, Assistant United States Attorney, hereby certify that on March 16, 2011, I electronically filed the within and foregoing ***RESPONDENT'S UNITED STATES OF AMERICA ANSWERS IN OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 MOTION*** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Frank Hogue
Attorney at Law
Post Office Box 1795
Macon, Georgia 31202

I also certify that I have mailed by the United States Postal Service the document and a copy of

the Notice of Electronic Filing to the following non-CM/ECF participants:

Richard Glawson
F.C.C., USP-2
P.O. Box 1034
Coleman, Florida 33521-0879

                                          MICHAEL J. MOORE
                                        UNITED STATES ATTORNEY

                      BY:    s/CHARLES L. CALHOUN
                                        BAR NO. 102875
                                        ASSISTANT UNITED STATES ATTORNEY
                                        United States Attorney's Office
                                        Middle District of Georgia
                                        P.O. Box 1702
                                        Macon, Georgia 31202
                                        Telephone: (478) 752-3511
                                        Fax Number: (478) 621-2655