IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| RICHARD BEN GLAWSON, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| VS. | : | NO. 5:05-CR-13 (HL) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | Proceeding under 28 U.S.C. § 2255 |
| Respondent. | : | Before the U. S. Magistrate Judge |
| _____ | : | |

### RECOMMENDATION

Before the Court is Petitioner Richard Ben Glawson's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Doc. 131. Petitioner was convicted of multiple drug and firearm violations, as well as escape, and sentenced to 327 months in prison. In his motion, Petitioner alleges: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and, (3) intentional prosecutorial misconduct. The majority of Petitioner's claims stem from two misguided contentions: (1) that cocaine base, also known as crack cocaine, is not a controlled substance under federal law; and, (2) that the Government's use of confidential informants' testimony, pursuant to a plea agreement that anticipated a sentence reduction, constitutes bribery under federal law.  For the following reasons, it is hereby **RECOMMENDED** that Petitioner's motion be **DENIED**.

### BACKGROUND

1. **Course of Proceedings**

On May 16, 2007, a seven count second superseding indictment was returned in this Court against Petitioner Richard Ben Glawson. Doc. 84. Count One charged that on June 3,

1

2003, Petitioner distributed a Schedule II controlled substance containing cocaine base, also known as "crack" cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. Count Two charged that on June 4, 2003, Petitioner distributed a Schedule I controlled substance, marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 18 U.S.C. § 2. Counts Three and Four charged that on June 20, 2003 and June 23, 2003, respectively, Petitioner distributed more than five (5) grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 18 U.S.C. § 2. Count Five charged that on November 30, 2004, Petitioner possessed with the intent to distribute a Schedule I controlled substance, marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(D), and 18 U.S.C. § 2. Count Six charged that on July 3, 2003, Petitioner possessed a firearm after being convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Seven charged that on December 25, 2006, Petitioner escaped from custody while housed at the Bibb County Law Enforcement Center, in violation of 18 U.S.C. § 751(a). Doc. 84.

Petitioner was tried from October 29, 2007 to October 31, 2007. Docs. 119-21. The jury returned guilty verdicts convicting Petitioner of all counts. Doc. 121. On March 13, 2008, Petitioner was sentenced based on a sentencing guideline range of 262 to 327 months. The Court sentenced Petitioner to a total of 327 months of imprisonment, followed by five years of supervised release. Doc. 121.

Petitioner filed a timely appeal, and his conviction was affirmed by the United States Court of Appeals for the Eleventh Circuit on April 15, 2009. United States v. Glawson, 322 Fed.Appx. 957 (11th Cir. 2009). On appeal, Petitioner challenged three of the Court's evidentiary rulings: (1) that five exhibits of drug evidence should not have been admitted

because gaps existed in the chain of custody; (2) that the cross-examination of Dustin Collins, a forensic chemist who performed a second test of the drugs in question, should not have been limited; and (3) that a photograph used by a witness to identify Petitioner should not have been admitted because it was irrelevant, not properly authenticated, and confusing to the jury. Id. After his unsuccessful appeal, Petitioner petitioned the United States Supreme Court for a writ of certiorari, which was denied on January 26, 2010. Doc. 130. On September 27, 2010, Petitioner filed the present Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Doc. 131.

2. **Factual Background**

In June of 2003, the Macon, Georgia, office of the Bureau of Alcohol, Tobacco, and Firearm (ATF) and the Bibb County Drug Squad initiated a joint narcotics investigation targeting Petitioner. Federal Special Agent Rafiq Ahmad and Deputy Joseph Whitehead led the investigation. Doc. 119 at 28. Although Whitehead participated in all phases of the investigation, he was deceased at the time of trial. Doc. 119 at 29. Ahmad and Whitehead enlisted the help of two confidential informants to conduct the investigation: James Jordan and Katina Fort. Doc. 119 at 28. Jordan and Fort agreed to assist the investigation as part of plea agreements to charges from a separate indictment. Doc. 119 at 106, 136. The plea agreements stated that the Government would move to reduce the sentences imposed on Jordan and Fort if they provided substantial assistance to the Government.

The Government's investigation consisted of controlled purchases of crack cocaine, marijuana, and a firearm from Petitioner by Jordan and Fort. Fort had met Petitioner prior to the investigation and knew him by the names of Terry Green and Terry Butler. Doc. 119 at 107.

Jordan knew Petitioner through Fort, who was Jordan's girlfriend. Doc. 119 at 138. The Government initiated four different meetings between Petitioner and the informants, with either Jordan or Fort used as the buyer on each occasion. Jordan and Fort never made purchases from Petitioner together during the investigation.

The Government used essentially the same investigative procedure for each controlled buy from Petitioner. First, Fort or Jordan would meet with Ahmad and Whitehead and make a recorded phone call to Petitioner to arrange the buy. Doc. 119 at 30, 108, 140. Ahmad and Whitehead would search the informants and provide them with money to purchase the drugs. Doc. 119 at 31, 144. Then, Fort or Jordan would meet Petitioner at the agreed upon location and make the buy while Ahmad and Whitehead conducted surveillance. After receiving the drugs, the informant would return to the location of the initial meeting with Ahmad and Whitehead and turn the drugs over to the officers. R. 119 at 33-34. At trial, the Government introduced the recorded telephone conversations as well as photographs of Petitioner taken by Ahmad and Whitehead during the transactions.

The controlled buys involving Fort and Jordan occurred from June 3, 2003 to July 3, 2003. At the first buy, Fort purchased ten grams of crack cocaine from Petitioner. Doc. 119 at 118-19. These drugs were introduced at trial as Government's exhibit 53. Doc. 120 at 109. At the second buy, Jordan purchased approximately twenty-six (26) grams of marijuana from Petitioner. Doc. 119 at 145. These drugs were introduced at trial as Government's exhibit 54. Doc 120 at 109. At the third buy, Jordan purchased eighteen grams of crack cocaine from Petitioner. Doc. 119 at 155. These drugs were introduced at trial as Government's exhibit 55. Doc. 120 at 109. Exhibits 53, 54, and 55 were tested by Dustin Collins, a forensic chemist, and

all three exhibits tested positive for cocaine base. Doc. 120 at 128-33. At the fourth buy, Jordan purchased a 9mm pistol from Petitioner. Doc. 119 at 178. Each buy occurred at a restaurant or gas station at the intersection of Riverside Drive and Arkwright Road in Macon.

Petitioner was arrested over a year later during a separate investigation undertaken by the Middle Georgia Drug Task Force. Doc. 120 at 24. In that investigation, a confidential informant, later identified as Chris Westfaul, called Petitioner and arranged to buy four ounces of marijuana. Petitioner was arrested during a traffic stop conducted after the arresting officer saw a vehicle that matched the description provided by Westfaul. Doc. 120 at 34. The officer found four one-ounce bags of marijuana in the vehicle. Doc. 120 at 39. These drugs were introduced at trial as Government's exhibit 59. Doc. 120 at 42.

Petitioner's truck became a key to the Government's ability to identify him as the seller in the earlier controlled buys involving Fort and Jordan. Petitioner drove a white pick-up truck with an orange bed liner to each of the transactions with Fort and Jordan. Doc. 119 at 32, 119, 145, 154, 177. Westfaul, who knew Petitioner as Richard Glawson, was familiar with Petitioner prior to his controlled buy because he had worked on Petitioner's truck. Doc. 120 at 21-23. Specifically, Westfaul had painted Petitioner's white truck black, and testified that the truck had an orange bed liner. Doc. 120 at 23.

At trial, Petitioner's defense was that of mistaken identity. Doc. 121 at 32. Petitioner's trial counsel used cross-examination and closing argument to focus on flaws in the Government's ability identify Petitioner. Petitioner's trial counsel argued that because Jordan and Fort never knew Petitioner by the name of Richard Glawson, because a white pick-up truck is an incredibly common vehicle, and because Petitioner was not arrested during the initial

5

investigation by Ahmad and Whitehead, the Government could not prove beyond a reasonable doubt that the dealer was in fact Petitioner. Although multiple witnesses for the Government, including Fort, Jordan, Ahmad, and Westfaul, identified Petitioner in the courtroom as the dealer, Petitioner's counsel argued that it is easy to identify someone as the wrongdoer when that person is sitting at the defense table.

## DISCUSSION

Petitioner raises three grounds for relief: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and, (3) intentional prosecutorial misconduct. Doc. 131. The majority of Petitioner's claims on all three grounds stem from his arguments (a) that cocaine base, also known as crack cocaine, is not a controlled substance under federal law; and, (b) that the Government's use of confidential informants' testimony, pursuant to a plea agreement that anticipated a sentence reduction, constitutes bribery under federal law. Because these arguments are without merit, Petitioner cannot show that his counsel was ineffective for failing to raise them.

1. **Ineffective assistance of trial counsel**

Petitioner claims that trial counsel's performance pre-trial, during trial, and during sentencing was constitutionally ineffective. The Sixth Amendment of the United States Constitution states that "in all criminal prosecutions, the accused shall enjoy…the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel provision provides the accused the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970). To prevail on a claim of ineffective assistance of counsel, the petitioner bears the

burden of establishing by a preponderance of the evidence that: 1) his attorney's performance was deficient, *and* 2) he was prejudiced by the inadequate performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000). A petitioner must prove both prongs of the Strickland test to show his counsel was ineffective. Id.

To establish deficient performance, a petitioner must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. Chateloin v. Singletary, 89 F.3d 749, 752 (11th Cir. 1996). A strong presumption exists that the counsel's performance was reasonable and the challenged action constituted sound trial strategy. Id. In order to establish that counsel's performance was unreasonable, a petitioner must show that no objectively competent counsel would take the action in question. Van Poyck v. Florida Department of Corrections, 290 F.3d 1318, 1322 (11th Cir. 2002).

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the outcome of the proceedings would have been different. Strickland, 466 U.S. at 697; Meeks v. Moore, 216 F.3d 951, 960 (11th Cir. 2000). Reasonable probability is defined as a "probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694). If a petitioner fails to prove that he has suffered prejudice, the court need not address the deficient performance prong of the Strickland test, or vice versa. Holiday v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

Petitioner has requested an evidentiary hearing in this matter. Doc. 108 at 20. Petitioner has the burden to establish the need for an evidentiary hearing, and the Court is not required to

hold an evidentiary hearing where the record makes "manifest the lack of merit of a Section 2255 claim." United States v. Lagrone, 727 F.2d 1037, 1038. (11th Cir. 1984). As explained below in addressing each of Petitioner's grounds for relief, the files and records in this case are sufficient to show that Petitioner's claims are without merit, and no evidentiary hearing is necessary.

### a. Cocaine base, also known as "crack" cocaine, is a controlled substance under Federal law.

Many of Petitioner's claims of ineffective assistance of trial counsel are based in Petitioner's contention that neither cocaine base nor crack cocaine is listed as a schedule II controlled substance under 21 U.S.C. § 812. Petitioner concedes that cocaine is listed under 21 U.S.C. § 812, but Petitioner argues that crack cocaine is not covered by the statute because crack cocaine is not specifically named in 21 U.S.C. § 812. In pertinent part, 21 U.S.C. § 812(c) lists the following as a schedule II controlled substance:

> Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical geometric isomers, and salts of isomers; ecognine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

Not surprisingly, the Eleventh Circuit has determined that crack cocaine is a schedule II controlled substance under 21 U.S.C. § 812. United States v. Rogers, 228 F.3d 1378, 1328 n.17 (11th Cir. 2000) (overruled on other grounds); United States v. Sloan, 97 F.3d 1378, 1381-82 (11th Cir. 1996); United States v. Catchings, 922 F.2d 777, 780 (11th Cir. 1991). Additionally, the Supreme Court has found that "crack and powder cocaine are two forms of the same drug." Kimbrough v. United States, 552 U.S. 85, 94 (2007).

Petitioner claims that his trial counsel was ineffective during pre-trial proceedings for failing to ascertain whether Petitioner was in fact indicted for federal crimes. Petitioner contends that his trial counsel should have taken the stance that Petitioner could not be prosecuted because crack is not a controlled substance. It was reasonable for trial counsel not to make this argument because the law has established that crack is covered as a controlled substance under 21 U.S.C. § 812. Further, Petitioner was not prejudiced by his trial counsel's failure to make this argument because the argument has no merit.

### b. Petitioner's trial counsel provided effective assistance in his efforts to challenge evidence of drug testing.

Next, Petitioner claims that his trial counsel was ineffective for failing to object both before and during trial to testimony regarding a second testing of the cocaine. The drugs were first tested by Margaret Littley, whose report showed that the drugs tested positive for cocaine. Official Rep. (Doc. 131-1 at 34). They were tested a second time by Dustin Collins, whose report showed that the drugs tested positive for cocaine base. The Government called Collins to testify but did not call Littley. Collins testified that the drugs had previously been tested by another chemist and that there may have been some discrepancies between the two tests. Petitioner contends that his trial counsel should have prevented the admission of the second test because the first test found "cocaine" and the second test found "cocaine base."

In fact, Petitioner's trial counsel did object to testing procedure. Trial counsel requested that the trial court judge allow him to cross-examine Collins about the first test of the drugs and about the need to test the drugs a second time. The court did not allow trial counsel to get into that line of questioning due to hearsay issues. Trial counsel then objected to admission of the second test, arguing that the chain of custody was incomplete due to the fact that Littley was not

present to testify about her possession of the drugs. That objection was overruled. The record shows, however, that Petitioner's trial counsel's effort to prevent admission of the results from the second testing of the drugs was within the "wide range of reasonable professional assistance" recognized in Strickland. 466 U.S. at 689.

Petitioner also claims that his trial counsel was ineffective for failing to make a Rule 29 motion regarding the crack cocaine charges.[1] Rule 29 of the Federal Rules of Criminal Procedure states that a defendant may move for judgment of acquittal after the close of the Government's case, and the court must enter a judgment of acquittal if the evidence is insufficient to sustain a conviction. It was not unreasonable for Petitioner's trial counsel to fail make a Rule 29 motion regarding the crack cocaine charges. Again, crack cocaine is a schedule II controlled substance. The Government produced eyewitnesses, photographs, audio, and expert testimony all providing sufficient evidence from which the jury could reasonably find Petitioner guilty of distributing crack cocaine. Therefore, it was reasonable for Petitioner's trial counsel to fail to make a Rule 29 motion regarding the crack cocaine charges.

Petitioner then contends his trial counsel was ineffective for failing to object to the jury instruction that "cocaine base, which is also known as crack cocaine, is a controlled substance within the meaning of the law" (Doc. 121 at 59). Crack cocaine is a controlled substance; therefore, it was not unreasonable for Petitioner's trial counsel to fail to object.

---

[1] Trial counsel did make a Rule 29 motion as to the escape charge.

**c. The Government's use of confidential informants' testimony, pursuant to a plea agreement that anticipated a sentence reduction, did not constitute bribery under federal law.**

Petitioner also makes claims of ineffective assistance of trial counsel based on the argument that the Government's offer of the potential for a reduction of sentence in exchange for testimony constitutes bribery under 18 U.S.C. § 201(c).[2] The Eleventh Circuit has held that the Government's exchange of sentencing recommendations for cooperation does not violate 18 U.S.C. § 201(c). United States v. Thayer, 204 F.3d 1352, 1357 (11th Cir. 2000) (citing United States v. Lowery, 166 F. 3d 1119 (11th Cir. 1999)). Thus, it is legal for the Government to use informants whose testimony was secured in exchange for a promise of a potential sentence reduction. Id.

Petitioner claims that his trial counsel was ineffective for failing to object to the Government's use of confidential informants whose testimony was secured by plea agreements that promised a potential reduction of the witnesses' sentences. Petitioner correctly asserts that an abundance of evidence against him was obtained through the cooperation of Katina Fort and James Jordan, both of whom were promised a potential sentence reduction in exchange for their cooperation and testimony. There is nothing illegal about the Government's negotiations or plea agreements with Fort and Jordan. Further, the fact that the testimony was obtained in exchange for plea agreements was brought to the jury's attention through trial counsel's cross-examination of Fort and Jordan. Therefore, it was reasonable for Petitioner's trial counsel to fail to object to their testimony.

---

[2] It is likely that Petitioner developed this argument from the Tenth Circuit's decision in United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998). In Singleton, the court ruled that the use of confidential informants pursuant to a plea agreement, which anticipated a sentence reduction, constituted bribery in violation of 18 U.S.C. § 201(c). However, Singleton is no longer good law in the Tenth Circuit because it was reversed on rehearing *en banc*. United States v. Singleton, 165 F.3d 1297 (10th Cir. 1999).

Petitioner also claims that his trial counsel was ineffective by aiding the United States Attorney commit a fraud on the jury by failing to object to the use of "paid witnesses." This claim is also based on the testimony of Fort and Jordan. Because the Government's use of these witnesses was legal, the Government did not commit a fraud on the jury, and Petitioner's trial counsel was not ineffective for failing to object to informants' testimony.

### d. Trial counsel was not ineffective in failing to raise meritless objections to the career offender enhancement

Petitioner's final claim of ineffective assistance of trial counsel asserts that his trial counsel was ineffective for failing to object to the Presentence Investigative Report's (PSR) determination that Petitioner was a career offender under United States Sentencing Guideline § 4B1.1. The PSR attributed at least 400 kilograms, but less than 700 kilograms of marijuana to Petitioner. This figure was the result of converting the 36.94 grams of crack purchased and 126.43 grams of marijuana seized to the marijuana equivalent. Petitioner's base offense level was 28 based on the quantity of drugs. See U.S.S.G. § 2D1.1(c)(6). Petitioner's offense level was then adjusted to 30 based on obstruction of justice due to his escape conviction. The PSR further stated that Petitioner was a career offender due to a prior armed robbery conviction and a controlled substance offense. Thus, his base level was raised to 34 with a criminal history of IV, resulting in an advisory guideline range of 262-327 months confinement.

The offense level of 34 was based on the career offender table under U.S.S.G. § 4B1.1. The table provides for an offense level of 34 when the offense statutory maximum is 25 years or more. Having been convicted of Counts One, Three, and Four, all involving crack cocaine, Petitioner faced a statutory maximum of forty years in prison. See 21 U.S.C. § 841(b)(1)(B)(iii).

Because the PSR correctly calculated the guideline range, Petitioner's trial counsel was reasonable in not objecting to the career offender enhancement.

Petitioner's claims of ineffective assistance of trial counsel are based on misunderstandings of the law and instances where his trial counsel made reasonable decisions not to make what could be considered frivolous objections. Accordingly, Petitioner's trial counsel was not ineffective.

### 2. Petitioner's appellate counsel provided effective assistance

Petitioner claims his appellate counsel was ineffective for failing to raise the issues regarding the legality of crack cocaine and the use of informant testimony discussed above. The right to effective assistance of counsel applies equally to counsel on appeal of right as it does to trial counsel. Evitts v. Lucey, 469 U.S. 387, 396 (1985). The Eleventh Circuit has held that the Strickland standard applies to ineffective assistance of appellate counsel claims. Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991). Thus, to prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that his appellate counsel's performance was deficient and that the petitioner was prejudiced by the performance. Id. Further, counsel cannot be found ineffective for failing to raise every non-frivolous defense. Chandler, 218 F.3d at 1319. Counsel must use his or her judgment to determine which claims and arguments to emphasize, which may require counsel to rule out other non-frivolous claims and arguments. Id.

Appellate counsel raised all issues which he felt were viable and important grounds for reversal. Letter to Pet. (Doc. 131-1 at 31). Appellate counsel has no obligation to raise arguments that are meritless. Because Petitioner's arguments regarding the definition of cocaine and the use

of informant testimony are without merit, appellate counsel was not ineffective for failing to raise those arguments on appeal.

### 3. The record does not show intentional prosecutorial misconduct

Petitioner claims he was deprived of a fair trial due to intentional prosecutorial misconduct based on his allegations that: (1) the indictments were secured for crack cocaine when the testing showed only cocaine powder; (2) the United States Attorney knew that there was no such drug as crack cocaine because it was not scheduled; (3) the United States Attorney knew he was violating the federal bribery statute by offering the informants' testimony; and (4) the United States Attorney knew that frauds on the jury were being committed. It has long been established that the prosecution's job is not to win the case, but to see that justice is done. Berger v. United States, 295 U.S. 78, 88 (1935). "It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Id.

The record does not support a claim of prosecutorial misconduct. Crack cocaine is a schedule II controlled substance. The Government's offer to trade a promise for a possible sentence reduction in exchange for cooperation does not constitute bribery. Although the initial testing of the drugs sold by Petitioner came back positive for cocaine, testimony was presented at trial that the drugs were tested a second time and found to be cocaine base. Nothing in the record indicates that the prosecution committed any fraud upon the jury or engaged in prosecutorial misconduct.

## CONCLUSION

For the above reasons, **IT IS RECOMMENDED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is **DENIED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 28th day of October, 2011.

s/ Charles H. Weigle\
Charles H. Weigle\
United States Magistrate Judge